IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| HOPE BAER,<br><br>        Plaintiff,<br><br>  vs.<br><br>MICHAEL J. ASTRUE, Commissioner of<br>Social Security,<br><br>        Defendant. | **MEMORANDUM DECISION & ORDER**<br><br>Case No: 2:09-CV-34-DN<br><br>Magistrate Judge David Nuffer |

       Plaintiff Hope Baer filed suit seeking judicial review of the decision of the Commissioner

denying her application for Supplemental Security Income (SSI) benefits under Title XVI of the

Social Security Act.[1]  The case is before the magistrate judge by consent of the parties under 28

U.S.C. § 636(c).[2]  After a careful review of the entire record and the parties' submissions, the

magistrate judge concludes that the decision of the Commissioner should be affirmed.

## PROCEDURAL HISTORY

       Baer applied for benefits on March 30, 2006[3] alleging that she became unable to work on

June 2, 2000[4] due to depression, high blood pressure, and thyroid problems.[5]  Baer's application

---

[1] 42 U.S.C. §§ 1381-1383f.

[2] Docket no. 14, filed April 8, 2009.

[3] Tr. 49-54.

[4] Tr. 49.  Baer subsequently amended the alleged onset date to March 30, 2006 (tr. 195), the date she applied for SSI.

[5] Tr. 67-68.

was denied initially,[6] and on reconsideration.[7]  Baer then obtained a hearing before an

Administrative Law Judge (ALJ) which was held March 26, 2008.[8]  In a written decision, the

ALJ determined that Baer was not eligible for benefits because she was capable of performing

jobs that exist in significant numbers in the national economy.[9]  The Appeals Council denied

Baer's request for review, making the ALJ's decision the final decision of the Commissioner.[10]

SUMMARY OF EVIDENCE

At the time of the ALJ's decision, Baer was 45 years old.[11]  She had an eighth grade

education[12] and past relevant work as a cashier/checker.[13]

**A.  Evidence at the Administrative Hearing**

**1.  Baer's Testimony**

Baer testified that she lives with her husband.  Her husband's cousin, who  also lives with

them, does the shopping.  Although Baer does not do any shopping, she occasionally will ride

with the cousin just to get out of the house.  At the store, she sits outside unless it is just in and

---

[6]Tr. 33-37.

[7]Tr. 40-42.

[8]A transcript of the hearing may be found in the administrative record at pages 191-210.

[9]Tr. 24.

[10]Tr. 3-5.

[11]Tr. 195.

[12]Tr. 195.

[13]Tr. 57, 68, 201-02.

out for bread or milk.  She stated that she could not stand in a line for fifteen or twenty minutes because it would be too much pressure on her knees.[14]

Baer's attorney questioned her about her restless leg syndrome.  She stated that it caused a feeling of heaviness in her legs to where she felt like she could not lift her legs at all.  She felt like there were tons of bricks holding her knees down.  She also experienced tingling or a pins-and-needles sensation in her feet.  She described it as a very annoying pain.  To try and relieve it, she had to keep stretching, standing up, sitting down, then standing up again, and stretching.[15]

Baer stated that she was sensitive to cold and felt cold all the time.[16]

**2.  Testimony of the Vocational Expert (VE)**

The VE testified that Baer's past relevant work was as a cashier/checker, which is classified as light, semi-skilled work with an SVP of 3.[17]

The ALJ asked the VE about a hypothetical person of Baer's age, education, skills, and past work experience who had the following limitations:

•       limited to sedentary work so far as lifting is concerned

•       able to sit up to six hours throughout the day in increments of 30 to 60 minutes

•       able to stand and walk five hours altogether in 30 minute increments

•       would need lie down for 1 hour during the day, but this could be during on standard 15-minute breaks and part of the lunch period

---

[14]Tr. 199.

[15]Tr. 199-200.

[16]Tr. 201.

[17]Tr. 201-02.

- would miss two days of work per month for a total of 24 days a year

- would be limited to rapid, repetitive hand movements to two-thirds of the workday

- would have to avoid extremes of reaching which would be about 70% of what a normal person could do

- would have mild decreased concentration due to fatigue[18]

The hypothetical individual would also have moderate mental limitations, meaning marginally satisfactory performance, in the following areas:

- ability to understand, remember, and carry out detailed instructions

- ability to maintain attention and concentration for extended periods

- ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances

- ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms, and to perform at a consistent pace.[19]

The VE testified that the hypothetical person would not be able to perform Baer's past relevant work because it was too heavy.[20]  However, the person would be able to perform other unskilled, sedentary work including the jobs of call-out operator (60,000 in the national economy), charge account clerk (70,000), and dowel inspector (20,000).  The VE testified that

---

[18]Tr. 202-03.

[19]Tr. 203.

[20]Tr. 203.

the number of those positions would be reduced by 30% to reflect all the elements of the hypothetical, particularly the rate of absenteeism, the minimal sit/stand option, and the reaching limitations.[21]

The ALJ then showed the VE a Physician's Assessment of Physical Capacities (Short Form)[22] completed by Dr. Easton Jackson on August 10, 2007, in which Dr. Jackson indicated that all reaching would be precluded.[23] The VE testified that if the hypothetical person could do no reaching, the three jobs would be eliminated and there would be no other work that the hypothetical individual would be capable of performing.[24]

The ALJ then showed the VE a Self Assessment of Physical Capacities form[25] that Baer completed at the beginning of the hearing. On the form, Baer indicated that she could sit for 30 minutes at a time, for a total of 1 hour in an 8-hour day; stand for 15 minutes at a time for a total of ½ hour in an 8-hour day; and walk for 5 minutes at a time for total of ½ hour in an 8-hour day. She further indicated that she must lie down for a total of 6 hours in an 8-hour day because of the need to stretch her legs and because she was tired. She could tolerate lifting up to 5 pounds four times an hour. She indicated that she had pain in the joints of the left hand and fingers due to carpal tunnel syndrome which caused limitations in writing and lifting. She had difficulty reaching with both arms. She also had trouble with stair-climbing, walking on uneven ground,

---

[21]Tr. 204-05.

[22]Tr. 190.

[23]Tr. 205

[24]Tr. 208.

[25]Tr. 98.

and standing for 10 minutes.[26]  The VE testified that taking the form as a hypothetical, there would be no work that the person could perform because the person would not be able to stay in a working posture long enough for work to be completed.[27]

## B.  Medical Evidence

### 1. Physical Impairments

The court discusses the medical evidence related to Baer's physical impairments in the body of this decision.  Therefore, it is not set forth here, except for a report by Dr. Jackson which summarizes Baer's physical impairments.

#### a. Easton Jackson, M.D.

On July 29, 2007, Easton Jackson, M.D., Baer's treating physician, signed a letter stating in pertinent part as follows:

To Whom It May Concern:

Hope Baer is a 45 year old patient of mine with multiple medical problems.  She's applying for disability and has asked for this letter to document her medical problems.  Hope's ongoing problems include severe depression resistant to treatment, restless leg syndrome, acid reflux disease, hypertension, hypothyroidism, and generalized pain in multiple joints.

Her current medication include Levothyroxine, Zoloft, Neurontin, Detrol L.A., Ibuprofen, Chantix, and Lisinopril.

Hope states that she is unable to perform physical labor or deskwork because of the severity of her restless leg syndrome.  Additionally, she states that she has difficulties with concentration and other cognitive activities because of her

---

[26]Tr. 98.

[27]Tr. 208-09.

depression.  She advises me that she is applying for disability primarily on the basis of these two medical problems.[28]

**2. Mental Impairments**

      **a.  Elizabeth Allen, Ph.D.**

On August 26, 2006, Dr. Allen performed a mental status evaluation at the request of the agency.  Baer identified "medical and depressive symptoms as her main complaints related to her social security disability."[29]  She also reported leg and knee pain, hypothyroidism and hypertension.  She stated that she was depressed and could not focus or concentrate, was always tired and had suicidal thoughts.[30]  Baer stated that about six years ago, she was diagnosed with hypothyroidism which resulted in her being chronically fatigued.  At about the same time she developed depressive symptoms which she believes are related to the hypothyroidism.  A year ago, she began experiencing leg and foot pain and numbness which were worse during the winter.  She rated her physical health as poor based on pain in her legs and feet.  Baer also reported that she quit taking blood pressure medication ten years ago and developed serious hypertension.[31]

Baer was cooperative throughout the examination, and her state of consciousness was clear and cognizant .  She was oriented to time place and person.  Her fund of general knowledge, use of vocabulary, and educational level were in the average range.  Her abilities to

---

[28]Tr. 140.  Several of Baer's medical records appear at more than one place in the transcript.  For convenience, the court does not cite to multiple page numbers.

[29]Tr. 106.

[30]Tr. 106.

[31]Tr. 107.

concentrate and attend were in the low average range. Her remote, recent, and immediate memory was average. Her thought processes and cognitive functioning were appropriate and coherent. Reality testing was normal.[32]

Regarding her daily activities, Baer reported that she had a driver's license, but rarely drove due to numbness in her legs and feet. She stated, however, that she would be able to access a city bus if there were a bus stop close to her house. She did not shop by herself. Her husband paid the bills, but she stated that she was able to manage her money independently. She prepared only simple meals, and did only light housekeeping because of fatigue and leg and foot pain. She stated that she had problems concentrating sufficiently to read novels. She got up between 8:30 and 9:45 in the morning, and fed her cats. Her husband took care of the children and sent them to school. She showered and washed her hair and then watched TV until she dozed off. She stated that she basically sat on the couch and did not go anywhere, although she did do word puzzles. She stated that one of the reasons she was depressed is because she did not do anything. She had no hobbies or pastimes except for the word puzzles. She had one friend with whom she associated infrequently. She did not attend church or clubs, and rarely socialized outside her family. She was uncomfortable in crowds. She also had become irritable, arguing with family and friends which was atypical for her. She had problems handling stress and reacted by becoming irritable, tearful, or withdrawing. However, she denied that her

---

[32]Tr. 108.

interpersonal behavior had ever been considered significantly inappropriate or threatening to others.[33]

Dr. Allen's diagnosis was Mood Disorder due to Hypothyroidism; Major Depressive Disorder, Single Episode. Dr. Allen estimated her current level of Global Functioning (GAF) as 55-60.[34]

### b. Psychiatric Review Technique

A Psychiatric Review Technique Form prepared by an agency consultant concluded that Baer suffers from an affective disorder, referred to as mood disorder due to hypothyroidism.[35] The consultant found that Baer's affective disorder resulted in mild restrictions in her activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompenstion of extended duration.[36]

### c. Mental Residual Functional Capacity Assessment

The consultant found that Baer's mental residual functional capacity was not significantly limited or only moderately limited in all areas of functioning.[37] He stated: "[Claimant] retains the capacity to understand, remember, carry out and sustain performance of simple routine tasks,

---

[33]Tr. 109.

[34]Tr. 109.

[35]Tr. 112, 115.

[36]Tr. 122.

[37]Tr. 126-27.

complete a normal workday (w/in physical limits) interact [with] others and adapt to changes/stressors associated [with] simple routine competitive work activities."[38]

## DISCUSSION

### A. Legal Standard

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[39]  The Act further provides that an individual shall be determined to be disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."[40]

A person seeking Social Security benefits bears the burden of proving that because of his disability, he is unable to perform his prior work activity.[41]  Once the claimant establishes that he has such a disability, the burden shifts to the Commissioner to prove that the claimant retains the ability to do other work and that jobs which he can perform exist in the national economy.[42]

---

[38]Tr. 128.

[39]42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

[40]42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

[41]*Miller v. Chater*, 99 F.3d 972, 975 (10th Cir. 1996); *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

[42]*Saleem v. Chater*, 86 F.3d 176, 178 (10th Cir. 1996); *Miller*, 99 F.3d at 975.

The Commissioner's decision must be supported by substantial evidence.[43]  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[44]  Evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.[45]

The Commissioner's findings of fact, if supported by substantial evidence, are conclusive upon judicial review.[46]  In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its judgment for that of the agency.[47]  However, the court should carefully examine the record and review it in its entirety.[48]  Failure of the Commissioner to apply the correct legal standard is grounds for reversal.[49]

The Commissioner has established the following five-step process for determining whether a person is disabled:

(1)     A person who is working is not disabled.  20 C.F.R. § 416.920(b).

(2)     A person who does not have an impairment or combination of impairments severe enough to limit his ability to do basic work activities is not disabled.  20 C.F.R. § 416.920(c).

---

[43]*Daniels v. Apfel*, 154 F.3d 1129, 1132 (10th Cir. 1998); *Hinkle v. Apfel*, 132 F.3d 1349, 1351 (10th Cir. 1997).

[44]*Richardson v. Perales*, 402 U.S. 389, 401 (1971)(quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[45]*Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992); *Emory v. Sullivan*, 936 F.2d 1092, 1093 (10th Cir. 1991).

[46]42 U.S.C. §§ 405(g), 1383(c)(3); Perales, 402 U.S. at 390.

[47]*Hinkle*, 132 F.3d at 1351; *Decker v. Chater*, 86 F.3d 953, 954 (10th Cir. 1996).

[48]*Musgrave*, 966 F.2d at 1374; *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

[49]*Daniels*, 154 F.3d at 1132; *Hinkle*, 132 F.3d at 1351.

(3)     A person whose impairment meets or equals one of the
        impairments listed in the "Listing of Impairments," 20 C.F.R. §
        404, subpt. P, app. 1, is conclusively presumed to be disabled.  20
        C.F.R. § 416.920(d).

(4)     A person who is able to perform work he has done in the past is not
        disabled.  20 C.F.R. § 416.920(e).

(5)     A person whose impairment precludes performance of past work is
        disabled unless the Secretary demonstrates that the person can
        perform other work available in the national economy.  Factors to
        be considered are age, education, past work experience, and
        residual functional capacity.  20 C.F.R. § 416.920(f).[50]

## B.  The ALJ's Decision

The ALJ performed the sequential analysis, finding as follows:  (1) Baer has not engaged in substantial gainful activity since March 30, 2006, the application date, [51] (2) she has severe impairments including osteoarthritis of the knees bilaterally, restless leg syndrome, major depressive disorder, mood disorder, and obesity;[52] (3) she does not have an impairment or combination of impairments that meets or equals the listings;[53] (4) she is unable to perform her past relevant work;[54] but (5) she is capable of performing jobs that exist in significant numbers in the national economy.[55]  Examples of jobs that the ALJ found Baer could perform include call out

---

[50]*Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

[51]Tr. 16.

[52]Tr. 16.

[53]Tr. 17.

[54]Tr. 23.

[55]Tr. 23.

operator, charge account clerk, and dowel inspector.[56]  Based on these findings, the ALJ

concluded that Heap was not disabled as defined by the Social Security Act.[57]

Baer raises four arguments in support of her disability claim:  (1) the ALJ erred at step

two by failing to find her acquired hypothyroidism condition to be a severe impairment; (2) the

ALJ erred in finding Baer not fully credible, (3) the ALJ erred in finding that the opinions of Dr.

Jackson were entitled to only "little weight," and (4) the ALJ erred in finding that Baer retains

the ability to perform the sedentary jobs identified by the VE.[58]

## C. Failure to Find Baer's Hypothyroidism to Be a Severe Impairment

Baer contends that the ALJ erred in not finding her hypothyroidism to be a severe

impairment.  However, the establishment of a "severe" impairment at step two of the analysis is

merely a threshold showing that the claimant must make so that the analysis may continue to the

next step of the sequential evaluation.  Once the claimant makes a showing of *any* "severe"

impairment at step two, as Baer did, the ALJ must continue the evaluation process and consider

all impairments, both severe and nonsevere.[59]  Any error by the ALJ in not finding a *specific*

severe impairment, "became harmless when the ALJ reached the proper conclusion that [Baer]

could not be denied benefits conclusively at step two and proceeded to the next step of the

---

[56]Tr. 23-24.

[57]Tr. 24.

[58]Plaintiff's Opening Brief (Opening Brief) at 1-2, docket no. 18, filed June 5, 2009.  Because the pages of the Opening Brief are not numbered, the court refers to the page numbers displayed when the document is viewed electronically.

[59]*See* 20 C.F.R. §§ 416.920(c), 416.923.

evaluation sequence."[60]  Thus, any arguable error, in and of itself, in not finding Baer's

hypothyroidism to be a separate severe impairment would have been harmless.[61]

Further, although it is undisputed that Baer was treated for hypothyroidism, there is no

evidence in the record that this condition constituted a severe impairment causing significant

limitations in her ability to work.  Rather, it appeared to be controlled with medication.[62]

Moreover, the reviewing physicians, whose opinions are treated as expert opinions,[63] did not

consider Baer's hypothyroidism to be a severe impairment.  In October 2006, Sai R.

Nimmagadda. M.D., stated, "The thyroid issues do not pose any significant limitations etc.

Based on the physical and overall medical problems no severe medical impairments are noted."[64]

On October 10, 2006, a consultant noted that "[t]he thyroid issues do not pose any significant

limitations etc."[65]  Similarly, in January 2007, David O. Peterson, M.D., who reviewed the case

with L. Barton, M.D., noted that Baer carried a diagnosis of depression, and was being treated for

hypertension, hypothyroidism, restless leg syndrome, and a recent episode of sinusitis.  Dr.

Peterson stated, "None of these constitute severe long-lasting impairment."[66]

---

[60]*Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008); *Hill v. Astrue*, No. 07-4226, 2008 WL 3339174, at *2 (10th Cir. Aug. 12, 2008) (unpublished)("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.").

[61]*See Fischer-Ross v. Barnhart,* 431 F.3d 729, 733-35 (10th Cir. 2005)(applying harmless error analysis).

[62]Dr. Jackson's notes consistently indicate that Baer was taking thyroid medication.

[63]416 C.F.R. § 416.927(f); SSR 96-6p, 1996 WL 374180.

[64]Tr. 99-100, 136.

[65]Tr. 110.

[66]Tr. 135.

Baer argues, however, that the ALJ's failure to find her hypothyroidism to be a severe impairment negatively affected his assessment of her functional limitations, specifically her limitations in the use of her upper extremities, as well as his decision to afford only "little weight" to the opinions of Dr. Jackson, her treating physician.[67] Citing medical resources from the Mayo Clinic and the *Merck Manual*, Baer states that hypothyroidism can lead to "(1) carpal tunnel syndrome; (2) joint pain and stiffness; (3) muscle aches, tenderness and stiffness, especially in the shoulders and hips: and (4) swelling of the knee joint and small joints in the hands and feet."[68] She further states that "[h]ypothyroidism can cause paresthesias of the hands and feet, often due to carpal-tarsal tunnel syndrome caused by deposition of proteinaceous ground substance in the ligaments around the wrist and ankle."[69] Baer argues that if the ALJ had properly considered her hypothyroidism, he "would have had before him the causal connection between her hypothyroidism and her severe limitation in use of her upper extremities."[70] She argues that "[t]he fatigue, peripheral neuropathy, and other complications caused by the disease have prevented [her] from working."[71]

The court concludes, however, that the ALJ sufficiently considered Baer's limitations in reaching his RFC determination. As the Commissioner argues, the ALJ accounted for any hand and foot paresthesias by limiting Baer's rapid, repetitive movements to 66% of an eight-hour day

---

[67]Opening Brief at 19.

[68]Opening Brief at 20.

[69]Opening Brief at 20.

[70]Opening Brief at 20.

[71]Opening Brief at 20.

and finding that she should avoid extremes of reaching which the ALJ defined as 70% of normal.[72]  Accordingly, the court concludes that the ALJ did not err in failing to find that Baer's hypothyroidism was a severe impairment.

## D. Credibility Determination

The ALJ found that Baer's allegations concerning her limitations were not fully credible. As the Tenth Circuit has observed, the evaluation of a claimant's subjective allegations of pain and other symptoms "ultimately and necessarily turns on credibility."[73]  Generally, credibility determinations are the province of the ALJ and should not be disturbed if supported by substantial evidence.[74]  Nevertheless, the ALJ's findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."[75]  In *Kepler v. Chater*, the Tenth Circuit held that the ALJ must give specific reasons for rejecting a claimant's subjective allegations of pain.[76]  However, so long as the ALJ sets forth the specific evidence he relies on in assessing credibility, the requirements of *Kepler* are satisfied.[77]

Baer asserts that a claimant's pain should be evaluated under the factors set forth in *Luna v. Bowen,*[78] in which the Tenth Circuit set forth a framework for evaluating subjective allegations

---

[72]Defendant's Answer Brief (Answer Brief) at 13, docket no. 19, filed June 26, 2009; see tr. 20.

[73]*White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).

[74]*McGoffin v. Barnhart*, 288 F.3d 1248, 1254 (10th Cir. 2002); *White*, 287 F.3d at 909.

[75]*McGoffin*, 288 F.3d at 1254 (quoting *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988)).

[76]68 F.3d 387, 391 (10th Cir. 1995).

[77]*White*, 287 F.3d at 909.

[78]834 F.2d 161 (10th Cir. 1987).

of pain and other symptoms.  Under this analysis, the ALJ must determine (1) whether the

claimant has established by objective medical evidence that she has a pain-producing

impairment; (2) whether there is a "loose nexus" between the impairment and the claimant's

subjective allegations of pain; and (3) if so, whether considering all of the evidence, both

objective and subjective, the claimant's pain is in fact disabling.[79]

     In this case, the ALJ followed the *Luna* analysis finding that Baer had medically

determinable impairments that could reasonably be expected to produce her alleged symptoms.

He stated, however, that after considering all of the evidence of record, he found her statements

concerning "the intensity, persistence and limiting effects" of her symptoms to be not fully

credible.[80]  In support of his credibility determination, the ALJ noted inconsistencies between

Baer's written estimates made at different times concerning the amount of weight she was

capable of lifting, and the amount of time that she could walk, sit, stand, and lie down.  The ALJ

further noted that Baer's estimates of her abilities also were inconsistent with those of her

treating physician, Dr. Jackson.  The ALJ also relied on psychologist Allen's report giving Baer a

GAF score of 55-60 "which indicates that her symptoms have only a mild to moderate effect on

her ability to perform work activities."[81]  The ALJ also found that Baer's description of her daily

activities provided to Dr. Allen were "directly contrary to her earlier allegations."[82]  Finally, the

ALJ noted:

---

[79]*Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004).

[80]Tr. 20-21.

[81]Tr. 21.

[82]Tr. 21.

Baer's physical examinations after October 2007 revealed no evidence of arthralgias, back pain, myalgias, dizziness, headaches, paresthesias, weakness, anxiety, depression, or sleep disturbances. She also demonstrated full, painless range of motion in all joints and muscle groups, no laxity or subluxation of any joints, and 5/5 strength throughout all her limbs.[83]

The ALJ concluded that "[a]ll these finding suggest that Ms. Baer is not as restricted by her impairments as she has alleged."[84]

Baer argues that the ALJ erred in finding that she was not credible. First, with regard to the inconsistencies between her self-assessments of her abilities to lift, walk, and stand, she states that it would be reasonable, depending upon the periodic waxing and waning of her symptoms, for her to believe that she could do more at one point in time than she could do at another point in time.[85] Regarding her report to Dr. Allen concerning her daily activities, she argues that "those activities are not of such consequence and are not inconsistent with other evidence in the record so as to justify a finding that Ms. Baer is not credible."[86] Finally, Baer argues that the ALJ's finding that her physical examinations after October 2007 revealed no evidence of her various physical impairments is not supported by substantial evidence. She asserts that her November 2007 examination by Sonja Cazier, N.P., was for a gynecological exam, not for treatment of the impairments upon which her disability claim is based. Thus, one would not expect detailed reports concerning joint pain or other non-gynecological concerns. Baer further asserts that Ms. Cazier nonetheless noted "Baer's continuing 'current problems' of acquired hypothyroidism,

---

[83]Tr. 21 (citations to record omitted).

[84]Tr. 21.

[85]Opening Brief at 23.

[86]Opening Brief at 22-23.

benign hypertension, generalized pain, GERD, major depression, and restless legs syndrome, and Ms. Baer's prescriptions for 9 prescribed medications."[87]  Baer also points out that when she saw Dr. Jackson in December 2007 for a Depo Provera injection, he also noted the same "current problems."[88]  In February 2008, Dr. Jackson examined Baer for bilateral knee pain.  After reviewing X-rays, he assessed her with bilateral osteoarthritis of the knee, with the right being more severe than the left, and also noted the continuing "current problems identified in November and December 2007."[89]  Finally, in March 2008, Dr. Jackson "confirmed that Baer has chronic pain due to osteoarthritis in multiple joints, peripheral neuropathy, degenerative disk disease, and somatic manifestations of depression and/or anxiety."[90]  Baer argues therefore that she was not asymptomatic as the ALJ implied in finding her not credible.[91]

First, the court notes that the ALJ did not find that Baer was asymptomatic as she suggests, but simply that the medical records did not support a conclusion that her symptoms were as limiting as she alleged.  While it is true, as Baer argues, that a claimant's symptoms may vary at different points in time, an ALJ properly may consider inconsistencies in the record in making his credibility determination as the ALJ did in this case.[92]  Similarly, while Baer correctly argues that an ALJ may not rely on minimal daily activities as substantial evidence that a

---

[87]Opening Brief at 23-24 (citing tr. 180).

[88]Opening Brief at 24 (citing tr. 173).

[89]Opening Brief at 24 (citing tr. 167-69).

[90]Opening Brief at 24 (citing tr. 188).

[91]Opening Brief at 24.

[92]See Huston v. Bowen, 838 F.2d 1125, 1132 (10th Cir. 1988).

claimant does not suffer disabling pain,[93] daily activities are among the factors that an ALJ should consider in assessing credibility.[94]

The court concludes that Baer's medical records noting her continuing "current problems" do not undermine the ALJ's credibility determination. Rather, they simply reflect Baer's diagnoses. The treatment notes do not contain any information or discussion concerning the severity of the "current problems" or the effect that they might have on her ability to do basic work activities.

Baer contends that the treatment notes from Ms. Cazier's November 8, 2007 examination would not be expected to contain detailed reports concerning her allegedly disabling symptoms because she was there for a gynecological examination. The court notes, however, that Ms. Cazier's notes demonstrate that this was an "annual exam" and went beyond simply gynecological concerns. On the subjective part of the exam, Ms. Cazier specifically noted with regard to the musculoskeletal system: "Negative for arthralgias, back pain, and myalgias."[95] Further, on the objective musculoskeletal examination, Ms Cazier noted "normal gait; grossly normal tone and muscle strength; full, painless range of motion of all major muscle groups and joints no laxity or subluxation of any joints."[96] Ms. Cazier's observations support the ALJ's finding.

---

[93] Opening Brief at 23 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993).

[94] *Luna*, 834 F.2d at 166; *Huston*, 838 F.2d at 1132.

[95] Tr. 179.

[96] Tr. 180.

Dr. Jackson's treatment notes from December 21, 2007 when Baer received a Depo Provera injection really do not contain any information pertinent to this case other than listing the continuing "current problems."[97]

Baer saw Dr. Jackson on February 19, 2008 for knee pain.[98] Dr. Jackson ordered X-rays which showed "Mild osteoarthritis, both knees, with mild joint space narrowing."[99] Objective examination showed "5/5 graded muscle strength of the quadriceps, hamstring and gastrocnemius."[100] Range of motion was "full active ROM in flexion, extension, internal and external rotation."[101] Thus, the ALJ's findings are consistent with Dr. Jackson's treatment notes.

Finally, Baer cites a letter written by Dr. Jackson on March 31, 2008 that states: "To Whom It May Concern: Hope Baer advises me that she needs documentation of the causes of her chronic pain. Multiple causes are likely to blame. These include osteoarthritis in multiple joints, peripheral neuropathy, degenerative disk disease of the spine, and somatic manifestations of depression and/or anxiety."[102] As the Commissioner argues, this statement is not supported by Dr. Jackson's treatment notes, and therefore, does not undermine the ALJ's credibility determination.

---

[97] Tr. 173-74.

[98] Tr. 167.

[99] Tr. 172.

[100] Tr. 168.

[101] Tr. 168.

[102] Tr. 188.

As discussed, the ALJ's credibility determination is entitled to great deference, and should not be disturbed where, as here, it is supported by substantial evidence.[103]   The court concludes that the ALJ in this case gave sufficient, specific reasons for his credibility determination.

## E. Analysis of Dr. Jackson's Medical Opinions

Next, Baer argues that the ALJ failed to give proper weight to the opinions of her treating physician, Dr. Jackson; in particular Dr. Jackson's opinion that Baer could not use her hands and arms to reach, or to push and pull, arm controls.[104]

"The ALJ is required to give controlling weight to the opinion of a treating physician as long as the opinion is supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with other substantial evidence in the record."[105]   "An ALJ may disregard a treating physician's opinion, however, if it is not so supported."[106]   In all cases, the regulations require that the ALJ "give good reasons" in his decision for the weight that he gave to the treating physician's opinion.[107]

The opinions at issue are based upon forms completed by Dr. Jackson in August 2007. Dr. Jackson filled in the blanks in a letter, dated August 2, 2007, sent to him by Baer's counsel.

---

[103]*Kepler*, 68 F.3d at 391.

[104]Opening Brief at 28.

[105]*Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).

[106]*Doyal*, 331 F.3d at 762 (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir.1994)).

[107]*Doyal*, 331 F.3d at 762; *Hamlin*, 365 F.3d at 1215.

In answer to a question asking what were Baer's diagnoses, Dr. Jackson wrote "major depression, restless leg syndrome, hypothyroidism, and generalized pain."[108] A second question asked, "What percent of time to you feel the client is impaired by the disabling condition?" The question was followed by a list of percentages ranging from 10% to 100% with blanks to be checked to indicate the percentage. Dr. Jackson checked the "80%" blank.[109]

On August 10, 2007, Dr. Jackson completed a Physician's Assessment of Physical Capacity (Short Form) which consists mainly of boxes to be checked. On the portion of the form dealing with the ability to use the hands and arms, Dr. Jackson checked boxes indicating that Baer was able to use both hands for handling, simple grasping, and fingering/fine manipulation for 34-66% of the workday. However, he checked "no" in the box asking whether the patient could use her hands and arms for "Reaching, push/pull arm controls."[110] Dr. Jackson also wrote on the form: "Hope reports chronic pain, which is generalized. This limits her abilities to sit or stand for extended periods of time."[111] As discussed, the VE testified at the hearing that a total inability to reach would preclude all jobs.[164]

In assessing the August 2, 2007 medical opinion, the ALJ noted that Dr. Jackson failed to indicate what "disabling condition" or what "signs, symptoms, or limitations caused him to issue an 80% restriction rating." The ALJ therefore found the opinion concerning the 80% rating to be

---

[108]Tr. 152.

[109]Tr. 152.

[110]Tr. 154.

[111]Tr. 154.

[164]Tr. 208.

"wholly unreliable."[165]  Baer argues that Dr. Jackson listed her diagnoses as "major depression, restless leg syndrome, hypothyroidism, generalized pain."  She states, "Those are obviously the disabling conditions, including the signs, symptoms, and functional limitations related to those conditions, that caused Dr. Jackson to issue his 80% restriction rating."[166]

The court agrees with the ALJ that Dr. Jackson's opinion regarding the 80% rating is not reliable.  First, Dr. Jackson gave no explanation for this finding.  Further, a careful review of his examination notes demonstrates that they do not provide any support for it.  Accordingly, the court concludes that the ALJ gave sufficient reasons for rejecting this opinion.

With regard to Dr. Jackson's opinion that Baer could not reach, push, or pull, the ALJ stated that "none of Dr. Jackson's prior case notes document a complete inability to use her hands and arms and there is no evidence that he has conducted any testing that would accurately measure her ability to use her hands and fingers or lift weights."[167]

Baer argues that there is ample evidence to support Dr. Jackson's assessment that she is unable to use her arms for reaching, and pushing and pulling arm controls.[168]  She states that the opinion "is supported by the existence of peripheral neuropathy that is caused by her hypothyroidism and osteoarthritis."[169]  In addition, she points to the self-assessment form that she

---

[165]Tr. 22.  A copying error in the original transcript submitted to the court caused the bottom portion of page 22 to be unreadable.  A new page 22 has been submitted and may be found in a separate folder, labeled Doc. 15, Vol. B.  A copy of this page is also attached to the Opening Brief as Exhibit A.

[166]Opening Brief at 25.

[167]Tr. 22.

[168]Opening Brief at 25-26.

[169]Opening Brief at 26.

completed just prior to the hearing in March 2008 in which she indicated that she had limitations in reaching with both arms.[170]  Baer also notes that in July 2007, Dr. Jackson noted that Baer was positive for "joint stiffness, limb pain, and myalgias, which also supports Dr. Jackson's opinion.[171]"

First, the court notes that the above-cited evidence upon which Baer relies is all based upon her own self-reporting.  Further, while the evidence Baer offers provides some support that she may have difficulty reaching, it does not support the opinion of Dr. Jackson that she has a complete inability to reach.  In fact, there is nothing in the treatment notes to suggest such a limitation.  In short, Dr. Jackson's treatment notes simply do not support the extreme arm impairment reflected in his opinion.

Baer also asserts that there is no requirement for a physician to conduct specific testing regarding the ability to use the hands and arms.  She states that if the ALJ thought such testing was necessary, he should have ordered it.[172]  In this regard, the court notes that there was discussion at the hearing concerning the reason why Dr. Jackson gave the "no reaching" opinion. The ALJ stated that he was not sure why Dr. Jackson gave that limitation, and asked Baer's attorney if he had any comments.  Her attorney responded that he did not.[173]  The ALJ then stated:

> In, in reading that form, it – if you read it – if you assume he read it to mean exactly what it says, that he's indicated that the claimant cannot use the arms for

---

[170]Opening Brief at 26 (citing tr. 98).

[171]Opening Brief at 26 (citing tr. 142).

[172]Opening Brief at 26.

[173]Tr. 207.

reaching or pushing or pulling, period.  Either arm.  And I don't know what the physiological basis for that is.[174]

The ALJ then asked the VE,  "Okay, well because we don't, because we don't have any idea what that is about, we'll just take it as it is, and if we include no reaching, what would be the response?"[175]  The VE replied, "There would, there would be no work, Your Honor."[176]

    At the close of the hearing, the ALJ asked Baer's attorney if the record should be held open for any additional exhibits.  Baer's attorney responded, "Well, that would be good.  Maybe I can get back and ask Dr. Jackson why – how he based – what he based his opinion on."[177]  The ALJ stated that would be helpful and gave him an additional 30 days to obtain the supplemental information.[178]  On April 4, 2008, counsel re-submitted what appears to be the same copy of the Physician's Assessment of Physical Capacities (Short Form) completed by Dr. Jackson in August 2007, and the March 31, 2008 "To Whom It May Concern" letter signed by Dr. Jackson which was discussed above[179]  However, no information was provided which would clarify Dr. Jackson's opinion concerning Baer's alleged complete inability to reach.

---

[174]Tr. 207.

[175]Tr. 208.

[176]Tr. 208.

[177]Tr. 209.

[178]Tr. 209.

[179]Tr. 188-90.

In a Social Security case, the claimant has the burden to prove her disability.[180]  While it is true that the ALJ has a duty to develop the record even when the claimant is represented by counsel, this duty is not unqualified.[181]  In general, an ALJ is entitled to rely on the claimant's counsel to structure and present the case in a way that her claims are adequately explored.[182]  In this case, counsel represented that he would contact Dr. Jackson to find out the basis for his opinion.  The ALJ thus was entitled to rely on counsel to obtain that information.  Accordingly, the ALJ had no duty to further develop the record in this regard.

Finally, Baer complains that the ALJ incorrectly stated that two months after providing the August 2007 medical opinions at issue, Dr. Jackson "found no evidence of arthralgias, back pain, and myalgias, no dizziness, headaches, paresthesias, or weakness, no anxiety, depression, or sleep disturbances."[183]  She states that contrary to the ALJ's opinion, Dr. Jackson's October 3, 2007 treatment notes confirm that she continued to suffer from acquired hypothyroidism, benign hypertension, generalized pain, GERD, major depression, moderate, and restless leg syndrome.[184]  In addition, Dr. Jackson's October 16, 2007 treatment notes repeated that Baer continued to suffer from these conditions.[185]

---

[180]*Wall v. Astrue*, 561 F.3d 1048, 1062 (10th Cir. 2009).

[181]*Id.* at 1062-63.

[182]*Id.* at 1062.

[183]Opening Brief at 26 (quoting ALJ's opinion at tr. 22).

[184]Opening Brief at 27 (citing tr. 186).

[185]Opening Brief at 27.  See Tr. 183-84.

While it is true that Dr. Jackson did list the continuing "current problems" in the subjective section of his treatment notes, there is no discussion of their effect, if any, on Baer's ability to perform work-related activities. Further, on October 16, 2007, Dr. Jackson noted "Negative for arthralgias, back pain and joint stiffness."[186] Thus, the ALJ's findings are consistent with Dr. Jackson's treatment notes.

Dr. Jackson provided one other medical opinion, discussed above, contained in the following letter, dated March 31, 2008: "To Whom It May Concern: Hope Baer advises me that she needs documentation of the causes of her chronic pain. Multiple causes are likely to blame. These include osteoarthritis in multiple joints, peripheral neuropathy, degenerative disk disease of the spine, and somatic manifestations of depression and/or anxiety."[187]

In assessing this opinion, the ALJ stated "there is no evidence in the record from [Dr. Jackson's] own findings or those of other medical sources of degenerative disk disease, peripheral neuropathy, or a somatoform disorder."[188] Baer argues that contrary to the ALJ's statement, she "did complain of back pain, joint stiffness, and myalgias in Dr. Jackson's July 27, 2007 report."[189] She further argues that her peripheral neuropathy is likely caused by her hypothyroidism as she previously argued.[190] Finally, she states that if the ALJ believed the record was incomplete with regard to proof of those conditions, he should have contacted Dr. Jackson

---

[186]Tr. 183.

[187]Tr. 188.

[188]Tr. 22.

[189]Opening Brief at 27 (citing tr. 142).

[190]Opening Brief at 27.

for more information.[191]  As previously discussed, when a claimant is represented by counsel, an

ALJ is generally entitled to rely on counsel to structure and present the case in a way that her

claims are adequately explored.[192]  With the possible exception of peripheral neuropathy, there is

nothing in Dr. Jackson's treatment notes to support the March 31, 2008 opinion.

In this case, the record reflects that the ALJ carefully reviewed and discussed the

evidence, and gave "good reasons" in his decision for giving "little weight" to the opinions of Dr.

Jackson[193]  This court may not reweigh the evidence or substitute its judgment for that of the

ALJ.[194]  Accordingly, the court concludes that the ALJ's analysis of the medical evidence was

proper.

## F. ALJ's RFC Assessment

Finally, Baer argues that the ALJ erred in finding that she retains the residual functional

capacity to perform the sedentary jobs that the VE identified.  Baer notes that most unskilled,

sedentary jobs require a good deal of sitting, a certain amount of standing and walking, and good

use of the hands and fingers.  Despite finding that she could sit for only 30 to 60 minutes at a

time, stand for 30 minutes at a time, was limited to performing rapid, repetitive movements for

up to only 66% of an eight-hour workday, and should avoid extremes of reaching, the ALJ

concluded that she still was capable of performing the jobs identified by the VE.  Baer argues

that based upon her sitting and standing limitations alone, she does not retain the ability to

[191]Opening brief at 27-28.

[192]*Wall*, 561 F.3d at 1062.

[193]See *Doyal*, 331 F.3d at 762; *Hamlin*, 365 F.3d at 1215.

[194]*Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

perform any sedentary work including the identified jobs.  Baer further asserts that the ALJ failed to ask the VE any questions about the actual requirements for rapid, repetitive movements for the identified jobs, making the record incomplete.  Baer argues that because the ALJ found that she was significantly limited in her ability to do rapid, repetitive movements and her ability to reach, the ALJ's conclusion that she could perform the jobs that the VE identified is not supported by substantial evidence.[195]

Regarding the ALJ's alleged failure to question the VE about the requirements for rapid, repetitive movements of the identified jobs, the court notes that Baer's counsel was given the opportunity to question the VE.[196]  Although he took advantage of this opportunity, he did not ask the questions that Baer now contends make the record incomplete.  Further, the ALJ included in the hypothetical to the VE all of Baer's limitations that the ALJ found credible.[197]  Since the VE was therefore aware of Baer's functional limitations, there was no need to question her about the actual requirements of the jobs she identified.  Accordingly, the VE's testimony constituted substantial evidence that the identified jobs could be performed by someone with Baer's limitations.

---

[195]Opening Brief at 28-31.

[196]Tr. 209.

[197]*See Decker v. Chater*, 86 F.3d 953, 955 (10th Cir. 1996).

**ORDER**

The Commissioner applied the correct legal standard, and his decision is supported by substantial evidence. Accordingly, the decision of the Commissioner is **AFFIRMED**.


March 27, 2010.

BY THE COURT:

David Nuffer
U.S. Magistrate Judge